# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| TERRANCE G. SIMMONS, | ) | CASE NO. 1:10CV1600 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **MEMORANDUM OPINION** |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

Before the Court are the Commissioner's objections (Doc. No. 24) to Magistrate Judge James Knepp's R&R (Doc. No. 22), which recommended that the Commissioner's decision to deny disability insurance benefits ("DIB")[1] be reversed and remanded for a proper determination of Plaintiff's disability onset date.[2] The Court has conducted its *de novo* review of the matters raised in the objections. Fed. R. Civ. P. 72(b)(3). For the reasons discussed below, the Commissioner's objections are sustained and the ultimate conclusion of the R&R is rejected.

## I. PROCEDURAL BACKGROUND

On July 29, 2004, Plaintiff filed applications for DIB and SSI due to arthritis and carpal tunnel syndrome, alleging a disability onset date of February 10, 2003. (TR 23, 81-84, 88.) He later asserted disability also due to high blood pressure, depression and memory loss.

---

[1] In order to qualify for DIB, an individual must have "insured status" and must prove disability before that insured status expires, that is, before the date last insured ("DLI"). 20 C.F.R. §§ 404.130 and 404.315.

[2] Plaintiff had also applied for Supplemental Security Income ("SSI"). Although he was denied DIB due to the ALJ's finding that he was not disabled prior to his DLI (June 30, 2005), that finding did not preclude granting him SSI, since there are no insured status requirements for SSI and he *was* found to be disabled as of February 1, 2006. and thereafter.

(TR 89, 104.) Plaintiff met the insured status requirements for DIB through June 30, 2005. (TR 25, 74.) Plaintiff's applications were denied initially on September 17, 2004 (TR 70) and upon reconsideration on June 30, 2005 (TR 64). He timely filed a request for a hearing (TR 63) and, more than two years later, on December 10, 2007, a hearing was conducted by an Administrative Law Judge ("ALJ"). (TR 285-304.) Plaintiff appeared and testified, represented by counsel. (TR 290-297.) A vocational expert ("VE"), Lynn S. Smith, also testified. (TR 297-303.) The ALJ issued a decision concluding that Plaintiff was not disabled prior to February 1, 2006, but was disabled thereafter. (TR 18-37.) The Appeals Council denied Plaintiff's request for review on May 17, 2010, making the ALJ's decision final. (TR 5-7.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

The case was referred to Magistrate Judge James R. Knepp II for a Report and Recommendation. The R&R, filed on August 11, 2011, concluded that there was no substantial evidence supporting the Commissioner's finding that the disability onset date was February 1, 2006, rather than prior to June 30, 2005. The R&R recommended that the case should be remanded for a proper determination of the disability onset date.

Plaintiff has filed no objections. The Commissioner has objected to the R&R's ultimate conclusion with respect to the disability onset date. Plaintiff has filed his opposition to the Commissioner's objections. (Doc. No. 25.)

## II. STANDARD OF REVIEW

This Court's review of the Magistrate Judge's R&R is governed by 28 U.S.C. § 636(b), which requires a *de novo* decision as to those portions of the R&R to which objection is made. Judicial review is limited to a determination of whether the ALJ applied the correct legal standards and whether there is "substantial evidence" in the record as a whole to support the

2

decision. 42 U.S.C. § 405(g); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance. *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). It is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Stanley*). If there is substantial evidence to support the Commissioner's decision, it must be affirmed even if the reviewing court might have resolved any issues of fact differently and even if the record could also support a decision in plaintiff's favor. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

### III. DISCUSSION

In his brief on the merits before the Magistrate Judge, Plaintiff raised two issues: (1) the ALJ violated the treating physician rule; and (2) the ALJ violated Social Security Ruling ("SSR") 83-20 in determining Plaintiff's disability onset date.

With respect to the first issue, the Magistrate Judge examined the weight given by the ALJ to the opinions of Dr. Fajobi and concluded that "the ALJ gave 'good reasons' for giving Dr. Fajobi's opinions 'no probative weight.'" (R&R at 18.) No one has objected to this conclusion and the Court, finding no error, **ACCEPTS** that conclusion of the R&R.

With respect to the second issue, the Magistrate Judge looked to Plaintiffs' other treating physician, Dr. Schaefer. Plaintiff had argued in his brief on the merits that the ALJ did not explain why he did not credit Dr. Schaefer's opinion that Plaintiff's physical limitations began earlier than February 2006. In this case, the disability onset date is important because, to be granted DIB, Plaintiff has the burden of proving that he was disabled prior to his DLI, June 30, 2005. Quoting SSR 83-10, 1983 WL 31249, the Magistrate Judge concluded that "the ALJ

3

here did not provide a '[c]onvincing rationale' for the date selected based on 'a legitimate medical basis' because there was no medical evidence of Plaintiff's condition during the relevant time period." (R&R at 19.) The Magistrate Judge further found that "there is a substantial gap in the record -- from February 2005 to February 2006 -- during which there is no evidence of Plaintiff's physical condition." (*Id.* at 20.) The R&R pointed out evidence provided by Plaintiff to prove that some of the conditions the ALJ found to be severe *after* February 1, 2006 were actually conditions that began *prior to* that date. (*Id.*) The R&R concluded that, "although [...] the ALJ may reasonably reject non-contemporaneous physician reports[3] in favor of contemporaneous objective evidence, [...], the ALJ here rejected Dr. Schaefer's opinion *without* objective evidence in the record to support the onset date." (*Id.* at 21, emphasis in original, citation omitted; footnote added.) The R&R further concluded that "[b]ecause Plaintiff's date last insured fell within that year-long gap, if the ALJ wished to reject Dr. Schaefer's opinion, he should have called a medical advisor to determine Plaintiff's onset date." (*Id.*) In light of this conclusion, the R&R recommends reversal of the Commissioner's decision as not being based on substantial evidence and remand "for proper determination of Plaintiff's disability onset date." (*Id.*)

The Commissioner objects to the R&R's ultimate conclusion, arguing that "there is medical evidence of Plaintiff's condition prior to February 1, 2006, and *the record as a whole* supports the ALJ's finding that this evidence showed Plaintiff capable of performing a limited range of light work prior to that date." (Doc. No. 24 at 1, emphasis added.) With respect to the

---

[3] At counsel's request, on December 14, 2006, Dr. Schaefer had completed an "Arthritis Residual Functional Capacity Questionnaire" purporting on that date to evaluate Plaintiff's "Condition prior to June 2005 and Continuing" (TR 226-28), even though Plaintiff had first seen Dr. Schaefer on February 16, 2006. The ALJ properly concluded: "These assessments are persuasive and probative only to the extent that Mr. Simmons has been precluded from performing more than the exertional requirements of sedentary work since February 2006 when he first began to see Dr. Schaefer." (TR at 31.)

4

"gap" in medical records from February 2005 to February 2006 upon which the R&R relies, the Commissioner points out that, since Plaintiff does not contend that any relevant medical records are missing, this is not a situation where further development of the record would result in more medical records being produced regarding Plaintiff's condition prior to February 1, 2006. The Commissioner argues that the record does demonstrate that, prior to February 1, 2006, Plaintiff's condition was not as severe as he alleges.

In response to the Commissioner's objections, Plaintiff argues that most of the medical evidence relied upon by the Commissioner for his assertion that the record as a whole supports the conclusion that, prior to February 1, 2006, plaintiff's condition was not very severe, was not even mentioned by the ALJ. The Commissioner concedes this point (Doc. No. 24 at 3), but argues that an ALJ need not "directly address[ ] in his written decision every piece of evidence submitted by a party." (*Id.*, quoting *Kornecky v. Comm'r of Soc. Sec.*, No. 04-2171, 2006 WL 305648, at * 10 (6th Cir. Feb. 9, 2006)).

The Commissioner is correct that there was a fair amount of evidence to show that Plaintiff's medical condition prior to February 2005 was not severe enough to render him disabled.[4] However, as properly pointed out by the R&R, there is a gap in the evidence from

---

[4] The record shows that, on August 18, 2004, Dr. Mehdi Saghafi conducted a physical examination of the Plaintiff for complaints of right hip pain. He noted that Plaintiff "walks with a cane and stable gait." (TR 151, 31.) There was "no gross deformity of the spinal column[ ]" and "no muscle spasms present in the back or neck." (*Id.*) While in a supine position, Plaintiff was able to raise both legs 60° (the limitation being caused by hip pain) and, from a sitting position, he could raise them to 90°, without hamstring spasm. He had symmetrical knee, ankle, biceps, triceps and brachioradialis reflexes. (*Id.*) Pin prick examination of the upper and lower extremities revealed no sensory deficit. (TR 152, 31.) Manual muscle testing revealed all normal ranges for strength, grasp, manipulation, pinch, and fine coordination. (TR 153, 31.) He had normal range of motion in his spine and major joints, except for the last 10° of flexion in both knees. (TR 154-56, 31.) There was no muscle spasm, spasticity, clonus or primitive reflexes present. (TR 154, 31.) In Dr. Saghafi's report of that same date, he concluded that Plaintiff was "able to sit, stand, and walk eight hours per day[,]" did "not need ambulatory aid[,]" was "able to lift and carry 20 pounds of weight on a frequent basis and lift and carry 50 pounds of weight on occasions[,]" was "able to push, pull, and manipulate objects[,]" was "able to operate hand and foot controlled devices, drive a motor vehicle, and travel[,] was "able to climb stairs[,]" and had "[s]peech, hearing, memory, orientation, and attention [...] within normal range." (TR 152, 31.) Plaintiff also told Dr. Saghafi that he was not seeing any doctors for his right hip pain, which he first noticed in

5

February 2005 to February 2006. No one is suggesting that there are any records missing; in fact, Plaintiff argues in opposition to the objections that this is a "red herring" raised by the Commissioner. Rather, the R&R's conclusion, with which the Plaintiff agrees, is that, given the gap in evidence, the disability onset date had to be inferred and, in such circumstances, SSR 83-20 states that the ALJ "should call on the services of a medical advisor[.]" Here, the ALJ did not consult a medical advisor in selecting February 1, 2006 as the disability onset date. Rather, he chose that date because that was approximately when the Plaintiff initially saw Dr. Schaefer, whose outpatient notes at that time reflected objective findings that suggested disability.[5]

The R&R concluded that there was "no convincing rationale" for selecting February 1, 2006 as the disability onset date. Plaintiff agrees with this conclusion and urges this Court to do the same. The Commissioner would have this Court rely on the medical evidence in the record prior to February 2005, which shows that Plaintiff's conditions were not yet disabling (*see*, note 4), *and* the fact that there are no records of treatment from February 2005 to February

---

1993. (TR 151.) X-rays taken of both hips on August 18, 2004 showed "no soft tissue swelling or abnormal calcifications" and a hip joint that "is well preserved." (TR 157.) Dr. Saghafi diagnosed a residual strain to the right and left hips. (152, 31.)

On December 2, 2004, Plaintiff went to the emergency room where he was seen by Dr. Julia Bruner for "hip, knees, feet and wrist pain." An LPN made visit notes indicating that Plaintiff "walked with a steady gait, no grimmacing." (TR 179.) After examination, Dr. Bruner noted full range of motion and no swelling, but pain with hip rotation and point tenderness. (TR 177.) She discontinued Plaintiff's use of Percocet and prescribed Ibuprofen and Naproxen. (TR 178.)

Plaintiff established regular care with Dr. Monique Robinson on January 13, 2005. He reported chronic knee, hip, back, and wrist pain, for which he was taking tylenol. (TR 163, 168.) He also reported numbness and tingling in his hands. (TR 163.) The doctor's notes from that encounter report a normal gait, normal and symmetric reflexes, grossly intact sensation, and no motor deficits. (TR 170.) He was prescribed medication for hypertension and referred to a pain management clinic. (TR 171.) Notes of a follow-up office visit with Dr. Robinson on February 10, 2005 indicate that Plaintiff reported "feeling well" since his previous visit. She noted that his medications were "well-tolerated without side-effects." Dr. Robinson also reported that Plaintiff's hypertension, another reason for claiming disability, was adequately controlled by medication. (TR 159, 27.) There is also a note that Plaintiff missed his first pain management session because he was sick (*id*.); there is no evidence that he subsequently attended any such sessions prior to February 1, 2006.

[5] Plaintiff's first visit with Dr. Schaefer appears to have been on February 16, 2006. (TR 264.)

6

2006, to conclude that the ALJ's decision regarding the disability onset date was properly supported.

Having conducted a *de novo* review, the Court concludes that the Commissioner has the better view. Although there is record evidence beginning around August 2004 that Plaintiff was seeking medical care for the conditions he now claims are disabling, that treatment suspended after January 2005 and did not resume until February 2006. This suggests that Plaintiff's condition during the so-called "gap" was not severe enough to need treatment. *Hamlin v. Comm'r of Soc. Sec.*, No. 96-3243, 1996 WL 729287, at * 2 (6th Cir. Dec. 17, 1996) ("[i]t is true that no new medical evidence was presented regarding the 1985-86 period, but this does not help the claimant; gaps in a history of medical treatment are likely to suggest that the claimant was not receiving treatment during the gaps and was not disabled then"). In fact, the gap itself may actually be considered evidence. *Ortiz v. Sec'y of HHS*, 955 F.2d 765, 769 (1st Cir. 1991) ("[w]e view these gaps in the medical record as 'evidence'"), cited by *Hamlin*, *supra*. *See also*, *Cox v. Sec'y of HHS*, No. 85-5697, 1986 WL 17287, at * 1 (6th Cir. July 11, 1986) ("[w]here a claimant wholly fails to establish entitlement during the period of his insured status, it is this *lack* of proof which constitutes the substantial evidence which supports the ALJ's decision"). Therefore, rather than concluding that the ALJ's determination of the disability onset date was unsupported by evidence, this Court concludes that the lack of medical care during the "gap" *was* evidence -- evidence that Plaintiff's condition was not severe enough to require medical care, much less severe enough to be disabling. There is no need for a medical advisor to reach this conclusion and, therefore, SSR 83-20 was not violated. The Commissioner's objection is sustained and the R&R's recommendation is rejected.

## IV. CONCLUSION

For the reasons set forth herein, the R&R's ultimate conclusion that this case should be remanded for a proper determination of the disability onset date is **REJECTED**. Further the Commissioner's decision to deny Plaintiff disability insurance benefits is **AFFIRMED** and this case is **DISMISSED**, with each party to bear its own costs.

**IT IS SO ORDERED**.

Dated: September 14, 2011

_____

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**